BUTLER, Respondent, vs. DAVIS, Appellant.

*September 9—September 29, 1903.*

(1) *Appeal: Immaterial error: Striking out evidence.*  (2) *Agency: Husband and wife.*  (3, 4) *Contracts: Drilling well: Implied guaranty: Time required.*

1. Striking out a statement volunteered by a witness on cross-examination is not a material error where the same statement made on the direct examination was not stricken out.
2. Where plaintiff's wife was his agent to collect moneys, but was not shown to have, or to have ever assumed, any broader authority, plaintiff was not bound by her statement, on receiving a partial payment for the digging of a well, that her husband would make the well all right.
3. In a contract to drill a well there is no implied undertaking that water shall be obtained, or that the well shall be a success as to quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner and with ordinary skill.
4. One who agreed to board a well-driller and helper while they were drilling a well for him cannot recover for any part of the

board furnished during such drilling, as being in excess of the agreement, if there was no contract as to the time the drilling would take and the work was not negligently prolonged.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed.*

This is an action to recover for services and materials furnished in drilling a well. The plaintiff claimed in his complaint that on November 25, 1901, he contracted with the defendant to drill a well upon the defendant's farm at the price of $1 per foot for drilling and 65 cents per foot for casing, and that under this contract he drilled 242 feet, and put in the same amount of casing, on which contract $175 was paid February 11, 1902; that on April 14, 1902, the parties made another agreement, by which the plaintiff was to drill the well deeper at the same rates as under the former contract, and that the plaintiff thereupon drilled eighty-six feet further, and put in seventy-three feet of additional casing, no part of which has been paid for; that plaintiff also sold the defendant certain pump fittings amounting in all to $28.35 in value, no part of which has been paid.

The answer of the defendant admitted the making of the contract with the plaintiff in November, 1901, by which plaintiff was to drill a well on defendant's farm at the price of $1 per foot and the reasonable value of the casing and pump fittings furnished, and that by the terms of said contract the plaintiff agreed that he would obtain a sufficient supply of water for the defendant's household and stock and all farm purposes, and put in a pump and attach it to a windmill on the premises, and leave the well in proper condition to furnish such sufficient supply of water. The answer further alleged that the plaintiff represented to the defendant that he could get water sufficient for the defendant's needs at from twenty to thirty feet, and that he would complete the well in not more than eight or ten days. The answer admits

that it was a part of the agreement that the defendant would board the plaintiff and his helper and his team while the well was being dug. The answer further alleged that the plaintiff commenced work about November 12, 1901, and continued to drill until February 11, 1902, and put in a pump into the well, and attached it to the windmill, and informed the defendant that the well was complete, and that there was a sufficient supply of water, upon the faith of which statement the defendant paid the plaintiff $175, the plaintiff agreeing to make the well all right if it was not so; that as matter of fact the supply of water was wholly inadequate, and in a few days failed entirely, and plaintiff again came to the farm about April 14, 1902, and continued to drill until about May 29, 1902, when he again put in the pump and attached it to the windmill, and informed the defendant that there was a sufficient supply of water; that as matter of fact there was not a sufficient supply of water, and that said well has never been completed, and is of no value; that the work was done in a careless and unworkmanlike manner.

The answer also contained a counterclaim by which the defendant sought to recover of the plaintiff the value of the board furnished to the plaintiff and his man and team for seventeen weeks; also the value of services in hauling water from the river during such time, and the value of fuel used by plaintiff in running his engine, as well as the sum of $175 paid by the defendant to the plaintiff—amounting in all to the sum of $461. The plaintiff replied to the counterclaim, in substance denying its allegations.

The action was tried before a jury, and a verdict for the plaintiff was rendered, with damages at the sum of $388.70, upon which judgment was entered for the plaintiff, with costs, and the defendant appeals.

*John A. Kelly,* for the appellant.

*D. W. Agnew,* for the respondent.

WINSLOW, J.   The main question at issue between the parties was whether the contract was simply to bore a well at a certain price per foot or whether the plaintiff, in addition, guaranteed to obtain a sufficient supply of water for the defendant's farm purposes.   Upon this question most of the minor questions hinged.   The evidence was in direct conflict upon the question, and it seems to have been fairly and fully submitted to the jury, who returned a verdict in favor of the plaintiff's version.   While many exceptions were taken, there are only a few of them which are tangible or worthy of serious attention, and these will be briefly considered.

It appeared that the payment of $175 was made by the defendant to the plaintiff's wife, and that she was her husband's agent for that purpose.   It did not appear, however, that she had any broader authority as agent of her husband, or had ever assumed to act as agent except to keep her husband's accounts and collect bills.   One Ellen Davis, who was present at the time the money was paid, was called as a witness by the defendant, and upon cross-examination volunteered the statement that when plaintiff's wife received the money she said that her husband would make the well all right.   This statement was stricken out by the court, and the ruling is assigned as error.   There are two answers to the claim.   In the first place, the witness had already testified to the fact in her direct examination, and the statement was never stricken out; in the second place, there is no evidence that the plaintiff's wife had any express or apparent authority to make any such agreement on behalf of her husband.

The court charged the jury that in a contract of well drilling there is no implied undertaking that water shall be obtained, or that the well shall be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner, with such skill as may ordinarily be expected from those who undertake such work.

It is contended that this instruction is erroneous, and that an agreement to obtain a sufficient supply of good water is implied in every contract to dig or bore a well. We are referred to no authority in support of this contention, nor have we found any. The uncertainty of obtaining a supply of good water, however skilfully the work is done, is matter of common knowledge. If well diggers were to be held to guarantee such results whenever they undertake to dig a well, we think there would be a great scarcity of diggers. We have no hesitation in approving the principle laid down by the trial court upon the subject.

The court took from the jury the consideration of all items in the counterclaim except the claim to recover the $175 paid on the contract, and this is claimed to be error. In support of this assignment of error it is said that there was evidence by the defendant to the effect that the plaintiff agreed that he would get water in eight or nine days; also that there was evidence that the well was negligently and unskilfully bored, and thus consumed several months in its construction, and hence that the defendant furnished board to the plaintiff and his helper and team for a long period, more than he was required to furnish by the contract, for which he is entitled to recover if the jury found either that the contract was as claimed by defendant or that the work was negligently prolonged. As to the first of these claims, it is sufficient to say that the defendant himself testified that the conversation between himself and the plaintiff was to the effect that the plaintiff thought it would take three or four weeks, but that he did not know the length of time it would take to get water. The evidence cannot be construed as showing that any definite contract as to time or depth was made by the plaintiff, even construing it most favorably to the defendant.

As to the second claim, there is absolutely no evidence that the boring of the well consumed any longer time by reason of careless or negligent work than it would have consumed if the

work had been faultless. It is true there was some evidence that the alleged failure to furnish a supply of good water was due to some defect in piping at the bottom of the well, but this failure, if such there was, did not tend to increase the time consumed, but rather to diminish it. All this evidence tending to show a failure to obtain a supply of good water on account of negligent work was properly submitted to the jury on the general question whether the plaintiff had fulfilled his contract, and under the circumstances of the case this was plainly its only legitimate function.

A number of instructions were requested by the defendant and refused, but, so far as they were correct, they were fully covered by the general charge. The general claim is made that the verdict is against the evidence, but examination of the record shows that this contention cannot be sustained.

*By the Court.*—Judgment affirmed.