Borg, Respondent, vs. Downing, Appellant.

*December 5, 1935—June 2, 1936.*

02:27464

*William A. Sheldon* of Elkhorn, for the appellant.
*J. Arthur Moran* of Delavan, for the respondent.
The following opinion was filed March 31, 1936:

Fritz, J.   In commencing this action, plaintiff, in his complaint, alleged a cause of action to recover damages from the defendant for his breach of contract to drill a well for plaintiff, by defendant's failure to use usual and ordinary principles of engineering, and to perform his work and complete the well in a workmanlike manner.   Defendant admitted constructing the well pursuant to a written contract, but denied that he had failed to properly perform the contract; and he counterclaimed to recover, on *quantum meruit,* for special services and materials furnished in excess of the contract requirements.

Under the evidence introduced on the trial, the plaintiff contended, and the court ruled, notwithstanding defendant's objections, that, in addition to issues in respect to defective workmanship by the defendant, there were issues for the jury as to whether the defendant had expressly guaranteed that if he were permitted to drill the well to St. Peter's sandrock, reasonably usable water would be obtained at that point; and

also whether the water coming from the well was reasonably usable water. Questions as to those issues were submitted to the jury in connection with other issues, and the jury found that the defendant had made such a guaranty, and that the water was not reasonably usable. Upon those findings, and also other findings by the jury, the court entered judgment for plaintiff's recovery of $4,867 from the defendant. As the findings in respect to that guaranty and the defendant's breach thereof afforded sufficient basis for the judgment, the primary questions on this appeal are whether there were issues in those respects under the evidence, and, if so, whether there was sufficient credible evidence to sustain those findings. In passing upon those questions, we are governed by the rules that, "If there is any credible evidence, which under any reasonable view will support or admit of an inference for or against the claim or contention of any party, then what is the proper inference to be drawn therefrom is for the jury and the court should not assume to answer such questions by substituting another answer after the verdict is returned." *Rupert v. Chicago, M., St. P. & P. R. Co.* 202 Wis. 563, 232 N. W. 550; and that, when a verdict is taken and judgment is entered thereon, the sole question for determination in that respect on this appeal is whether there is any credible evidence which in any reasonable view fairly admits of an inference that supports the jury's findings. *Steubing v. L. G. Arnold, Inc.,* 210 Wis. 513, 246 N. W. 554.

Before applying the tests prescribed by those rules to this case, it should also be noted at the outset that, "in a contract of well drilling there is no implied undertaking that water shall be obtained, or that the well shall be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner, with such skill as may ordinarily be expected from those who undertake such work." In approving an instruction to a jury to that effect, this court said in *Butler v. Davis,* 119 Wis. 166, 170,

96 N. W. 561 : ". . . The uncertainty of obtaining a supply of good water, however skilfully the work is done, is matter of common knowledge. If well diggers were to be held to guarantee such results whenever they undertake to dig a well, we think there would be a great scarcity of diggers. . . ." However, that rule does not prevent a contractor from making an express and enforceable guaranty that he will obtain reasonably usable water. As was said in *Keller v. Oberreich,* 67 Wis. 282, 30 N. W. 524 : "It was certainly competent for the plaintiff, by his contract, to make the obtaining of good water, . . . a condition precedent to his right to any pay for it. If such were the terms of the contract, then the plaintiff was not entitled to pay for the well without performance on his part, unless the defendant waived such performance." That is in accord with the following statement by the court in *Jackson v. Creswell,* 94 Iowa, 713, 61 N. W. 383 :

"If he had a contract, it was his own fault. The contract was of his own seeking, and he himself dictated its terms. He was an experienced man in the business of·drilling wells. He must have known that the procuring of plenty of water was a matter of much uncertainty. He therefore took the chance of being able to fully comply with his contract in that respect. We cannot relieve parties from obligations voluntarily entered into, even though the enforcement of them may sometimes seem to work a hardship to one of the contracting parties."

It should be further noted that the words "warranty" and "guaranty" are used indiscriminately (24 R. C. L. p. 153) ; and that :

"No particular form of words [is] necessary to constitute a warranty; that the word 'warrant' need not be used, nor any other of precisely the same meaning. If any word of affirmation is used in such a manner as to show that the party expects or desires the other to rely upon the assertion as a matter of fact, instead of taking it as an expression of the

judgment or opinion of the vendor, it amounts to a warranty." *Austin v. Nickerson,* 21 Wis. 549, 551, *542, *544

In accord with that, the court said in *Hoffman v. Dixon,* 105 Wis. 315, 319, 81 N. W. 491:

". . . No particular form of expression or words is necessary to make an express contract of warranty. The word 'warranty' is not necessary to it. An affirmation of the fact as to the kind or quality of an article offered for sale, of which the vendee is ignorant but upon which he relies in purchasing such article, is as much a binding contract of warranty as a formal agreement using the plainest and most unequivocal language on the subject. In Benj. Sales (6th ed.), 623, 625, as conclusions from a review of authorities in this country and England, including the New York cases overruling *Seixas v. Woods,* it is said: 'All agree that any positive affirmation of a material fact as a fact, intended by the vendor as and for a warranty, and relied upon as such, is sufficient' to constitute a warranty. . . ."

In the case at bar, the defendant commenced drilling the well under the following contract written by him, to wit:

"This agreement is entered on the 28th day of July, 1931, by Bert Downing, Walworth, Wisconsin, and Mr. Borg of Delavan Lake, Wisconsin, to drill an eight-inch well. Bert Downing agrees to furnish eight-inch galvanized pipe. It is to be twenty-five pounds to the foot and agrees to furnish an eight-inch steel drive shoe that goes to the bottom of the pipe. The well is to be located by Mr. Borg. Bert Downing is to get six dollars a foot. The well is not to go over one hundred fifty feet, unless it is very necessary. Bert Downing is supposed to furnish all tools to put this well in a workman-like way."

In that contract there was no warranty, whatsoever, in relation to obtaining usable water; and the plaintiff does not claim that there was any express warranty to that effect until after the defendant had drilled to a depth of two hundred ninety-five feet. Prior thereto, water had been reached at

one hundred fifty feet, but the defendant advised the plaintiff that there was not sufficient water at that point, and that it would be necessary to go farther. At the depth of two hundred ninety-five feet, there was also water, but the defendant admits that was in lime rock which gave the water an odor of rotten eggs and sulphur, and that he again advised plaintiff that the quantity was not sufficient to provide a good water supply, and that it would be necessary to go still deeper to St. Peter's sand. Plaintiff contends that then the defendant, in order to induce plaintiff to permit him to drill deeper, expressly warranted for the first time, that, if plaintiff permitted him to proceed, he would obtain usable water for the plaintiff. On the one hand, the defendant in testifying denied several times that he had told the plaintiff, at that stage of the drilling, that he would get good clear soft water, without any impurities, if he was permitted to continue drilling. He did admit, however, on cross-examination that he presumed that he did make representations to plaintiff that if he were permitted to go into St. Peter's sand that he would get a good first-class well, and that, in letters to the plaintiff he had written: "If you would let us go in this about seventy-five or one hundred feet you would then have a first-class well because that rock is a water-bearing rock. . . . All I want to do is make you a good well. . . . After you read this letter you can let me know if you want me to go deeper or not;" and that, "We are cutting all the way from five to fifteen foot a day, and it seems Mr. Borg that we had ought to hit the sandrock any minute, and if we hit the sandrock that will give you soft water that you can use for all purposes and make you an up to date well."

On the other hand, the plaintiff testified that after a discussion in regard to the water at the seventy-foot depth, he accepted Mr. Downing's judgment and relied on his statement, and told him to go further; that at the time defend-

ant had reached the one hundred fifty-foot depth, he told plaintiff that he did not believe that he had enough water there, and that, relying on his integrity, the plaintiff again told him to go further; and that when the drilling had reached the two hundred ninety-five-foot depth the defendant said, "Borg, if this is St. Peter's sandrock, if you go into that, you will get soft water and it will be the very best of water. It will give you as good a well as you can get," and there was nothing to indicate that the defendant did not mean what he said. Another witness testified that when the drilling was down to five hundred feet, he heard the defendant tell plaintiff that, "if he was allowed to go to St. Peter's sand, that there would be no question of the quality and quantity of the water."

Thus, although neither the word "warranty" nor "guaranty" was used by the defendant in the statements which he made to plaintiff to induce him to permit him to drill beyond the two hundred ninety-five-foot depth, there was evidence of sufficient affirmation by the defendant that he would obtain good soft water for plaintiff, to constitute, upon the latter's reliance thereon, as binding an express contract of warranty, as if the defendant had used the most formal and unequivocal language on that subject. *Smith v. Reed,* 141 Wis. 483, 487, 124 N. W. 489. Consequently, there was an issue for the jury as to whether the defendant guaranteed that, if he were permitted to drill the well to St. Peter's sandrock, reasonably usable water would be procured at that point; and the jury's affirmative finding on that issue was warranted by the evidence on that subject. Likewise, the jury's finding that the water was not reasonably usable at the time the defendant finally discontinued drilling was warranted by credible evidence to the following effect: Although the plaintiff continued making payments until he had paid $4,867, in reliance upon defendant's assurances that when

St. Peter's sandrock was reached good usable water would be procured, the defendant stopped drilling at a depth of nine hundred eighty-eight feet. The water obtained then was discolored by some red substance, and had the odor of rotten eggs and dead marsh matter. Although the defendant attempted to clear it up by pumping the well continuously for two weeks, and by putting in some chloride of lime, he was not successful. Upon plaintiff's continued complaint that the water was unusable, the defendant returned and made a further attempt to remedy the objectionable character of the water by inserting additional casing, removing some loose material that had collected in the bottom of the well, and filling the lower end to shut off a strata of "red marrow," described as a soft porous rock that disintegrated in water and gave it a red color. That attempt also failed to remedy the objectionable condition of the water, but the defendant sought on his counterclaim to recover the additional sum of $1,263.75 for that work and the materials used in connection therewith.

Those facts and circumstances, in addition to supporting the jury's finding that the water coming from the well, when the defendant finally discontinued drilling at nine hundred eighty-eight feet, was not reasonably usable water, also warranted the court's evident conclusion that, by reason of the defendant's failure to obtain reasonably usable water, he had breached his express warranty, and that the plaintiff, in making the payments to the defendant, upon his assurances that he would procure good usable water, had neither waived his right to defendant's performance in accordance with that warranty, nor accepted the well as completed in that respect. As there was no such acceptance or waiver by the plaintiff and he advanced the $4,867 with the expectation and upon the promise that the defendant would complete the well in accordance with the express warranty which he made upon

the modification of the original contract, when the drilling had reached the two hundred ninety-five-foot depth, the plaintiff was entitled to recover the money so advanced for drilling beyond that depth, regardless of whether he had otherwise sustained any damages by reason of the drilling of the well, *Keller v. Oberreich, supra;* and the defendant was not entitled to recover any additional compensation on his counterclaim.  However, as that express guaranty was not made until two hundred ninety-five feet had been drilled without any such guaranty, it was not applicable to that portion of defendant's work.  Consequently, although this subject has not been discussed by counsel, it would seem that the defendant is entitled to retain, out of the advancements made by plaintiff, compensation for drilling those two hundred ninety-five feet at the agreed rate of $6 per foot, or a total of $1,770.  Deducting that sum from the total advancements of $4,867 leaves $3,097 as the amount which plaintiff is entitled to recover herein, and the judgment must be modified accordingly.  In view of the foregoing conclusions, it is unnecessary to discuss the sufficiency of the evidence, and the jury's and the court's findings in respect to the defendant's failure to perform his contract in other respects.  Regardless of the findings in those respects, plaintiff was entitled to the recovery of $3,097 and interest, because of the defendant's breach of his express warranty.  The record discloses no prejudicial error in any of the respects assigned by appellant.

*By the Court.*—Judgment modified as stated in the opinion, and affirmed as modified.

A motion for a rehearing was denied, without costs, on June 2, 1936.