BULA, Respondent, vs. ONEIDA FARMS, Appellant.

*May 25—July 1, 1948.*

*Harvey C. Hartwig* of Milwaukee, for the appellant.
*Thomas E. McDougal* of Antigo, for the respondent.

PER CURIAM.* Appellant contends first, that respondent cannot recover because he failed to carry out his agreement to drill a well and produce water, and second, that he cannot recover because he was not a licensed well driller as required by secs. 162.02 (4) and 162.04 (3), Stats. Certainly the result of this transaction was most unfortunate. Where the responsibility lies is a question of fact.

During the summer of 1946 the pump on appellant's farm broke down and an officer of appellant corporation went to respondent's place of business in the city of Antigo, with whom he had had former business transactions, and purchased a pump, requesting it be installed. Respondent was engaged in the implement business, which included the sale and installation of plumbing and heating fixtures and water pumps. Respondent's employee Miller was sent to the farm to install the pump, which he testified could not be installed due to the fact that there was a broken point in the casing, causing the new point to break as it was being driven into the well. At that time he informed appellant's foreman of the conditions which he found and also informed him there was no water in the well and that appellant would have to get a well driller to get the point out and go down deeper and clean it out. The foreman informed him, "We will see what we can do." Nothing further was done during the year 1946 by mutual agreement of the parties as the tenant on the farm was moving and the farm would not be occupied until the following year.

In the spring of 1947 an officer of appellant corporation requested respondent to send someone to the farm and try the well once more. At that time Miller went back to the farm

* The opinion in this case was prepared by the late Mr. Justice BARLOW.

and informed Schultz, the manager, that there was nothing he could do with the well, and that so far as he knew it would be necessary to sink another well. He informed him he could dig it with a posthole digger and sink the casing down, and if they had good luck they would have water but he could not guarantee him anything. The manager said, "We might as well try," and directed him to go ahead. Miller proceeded with the posthole digger, with handle extensions and other equipment consisting of a sand pump, jeep, block and tackle. They would dig a few feet and then put the casing down, then dig some more dirt and try the pump again. After they reached water and quicksand they used the sand pump, which is a small weight that drops down into the shaft and picks up a little sand. After pulling it up by hand for a considerable length of time it was suggested they use the jeep, run it out one hundred fifty feet, and pull the sand pump up with that, which they did. Respondent himself was never on the premises. Appellant furnished men who were employed by it on the farm to assist in the work, the number varying from one to three men. After digging down approximately one hundred feet and installing the casing without getting water it was decided to abandon this effort, and appellant obtained the services of a well driller who sunk a well approximately seventy feet deep and obtained water.

From this evidence the trial court made findings of fact that the agent of respondent who attempted to install the pump found no water to be available, and that he did not harm the well that was already there; that appellant's agent requested respondent to install a new pump and do something to help get water on the farm; that neither respondent nor his agent at any time held themselves out to be well drillers but at the request of agents of appellant went to the farm and did everything they could to help appellant and its employees work on the well; that appellant's manager and foreman were consulted at frequent intervals and at all times observed what was going

on; that appellant was engaged in the business of digging the well and utilized the services of its own employees and also the services of respondent's employee. These findings of fact are sustained by the evidence and defeat appellant's contention that respondent contracted to drill a well and produce water. Appellant produced no direct evidence that respondent contracted to drill a well but relies on the inference that when it directed him to install a pump it was the duty of respondent to produce water in order to recover for the material furnished and services rendered. We are unable to agree with this contention. Respondent had no well-drilling equipment of his own, and there is no evidence he ever engaged in the well-drilling business. The trial court had a right to rely on the testimony of respondent and his agent, which he apparently did. This affirms the judgment.

Judgment affirmed.

MARTIN, J., took no part.