CHARLES, Respondent, vs. UMENTUM and wife, Appellants.

*May 6—June 3, 1952.*

650

For the appellants there was a brief by *Martin, Clifford, Warne, Duffy & Dewane* of Green Bay, and oral argument by *Lloyd O. Warne*.

For the respondent there was a brief by *Kehoe & Flatley* of Green Bay, and oral argument by *Robert H. Flatley*.

MARTIN, J.  Some attempt was made by the defendants to make it appear that plaintiff was retained by Blahnik and was to be paid by him.  However, the court's finding of fact that the defendants hired plaintiff is amply supported by the evidence.  There is likewise adequate support for the finding that the rate agreed upon between the parties was $4.50 per foot drilled.

We do not agree with Finding 6 of the trial court that the plaintiff cannot recover for the first hole because it was of no value to defendants.  It does not follow from the fact that the first hole did not produce sufficient water to meet the requirements of the defendants, that recovery cannot be had.  We find nothing in the record to show that plaintiff guaranteed an adequate supply of water.  In Wisconsin it is well settled that a contract to drill a well does not guarantee

water. In passing upon the instruction to the jury in *Butler v. Davis* (1903), 119 Wis. 166, 169, 170, 96 N. W. 561, that:

". . . in a contract of well drilling there is no implied undertaking that water shall be obtained, or that the well shall be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workman-like manner, with such skill as may ordinarily be expected from those who undertake such work," this court said:

"The uncertainty of obtaining a supply of good water, however skilfully the work is done, is matter of common knowledge. If well diggers were to be held to guarantee such results whenever they undertake to dig a well, we think there would be a great scarcity of diggers. We have no hesitation in approving the principle laid down by the trial court upon the subject."

It is true that plaintiff's drilling tools became imbedded in the rock at five hundred ninety feet in the first hole and that was the reason it had to be abandoned; but the cause of the sticking was not ascertained and nothing appears in the record to show that it was because of any neglect or improper workmanship on the part of the plaintiff. Defendants do not argue that the plaintiff's failure to comply with certain requirements of the state well-drilling code is evidence that the drilling was not done in a workmanlike manner. Plaintiff is therefore entitled to recover for the footage drilled in the first hole. *Borg v. Downing* (1936), 221 Wis. 463, 266 N. W. 182.

The trial court determined that plaintiff was entitled to recovery for the full seven hundred ninety feet drilled in the second hole. No reason for its conclusion is given except that "the second hole was of substantial benefit to the defendants."

It is the opinion of this court that plaintiff is entitled to recovery for only one hundred sixty feet in the second hole.

Henry Umentum testified that plaintiff said he would drill close to the first hole because he wanted to get his tools out; Ervin Jacobs, who did the actual work on the second hole, testified that the reason for drilling so close was that there was a possibility it would loosen the lost bit when he got down to that level.

When John Gauthier made his examination of the second hole it was found that the vein from which the water supply came was located at a depth of ninety to one hundred feet. From that level the water was dropping to the bottom of the hole and seeping away through sandstone. Upon his recommendation the hole was filled up to one hundred sixty feet, and when a pump was connected the well yielded seven hundred gallons per hour, an amount sufficient for defendants' needs.

Under these circumstances it is difficult to understand plaintiff's testimony that a test at one hundred sixty to one hundred eighty feet showed insufficient water. He had no explanation for it except "It wasn't there when we were drilling there, it couldn't be there." It is not shown that he consulted with defendants at that time to inform them of the amount of water produced at that level. Since the contract was for the plaintiff to drill until water in sufficient amounts for defendants' needs was found, the exercise of ordinary diligence required that plaintiff should have demonstrated the capacity of the well at that level. To go beyond this was not in the interests of the defendants, and the only reason we can assume for drilling deeper was that plaintiff was more interested in loosening up his lost equipment in the first hole than in producing water for the defendants.

Counsel for defendants argue that the plaintiff is bound by law to show good-faith compliance with the requirements of the state well-drilling code. The code requires, among other things, that a well be sterilized, flushed, tested for

yield, and capped on completion. Plaintiff testified he would have put in pipe and connected a pump, or capped the well, if defendants had been willing to pay for it, but when he finished drilling he was told he would not be paid. The requirements of the code were complied with by John Gauthier, and plaintiff is penalized for his failure by the reduction of his recovery by the amount paid to Gauthier for his services in that respect.

We therefore conclude that (1) plaintiff should recover for the footage which he drilled in the first hole; (2) plaintiff should recover for drilling one hundred sixty feet in the second hole, plus the cost of materials furnished, less $87.50.

*By the Court.*—The judgment is modified as stated in the opinion, and affirmed as so modified. No costs to either party.