Atwood Vacuum Machine Company, Appellant, v. Varner Well and Pump Company, Appellee.

Gen. No. 10,767.

Opinion filed December 4, 1954. Released for publication December 23, 1954.

L. W. MENZIMER, and DALE F. CONDE, both of Rockford, for appellant.

FRANK P. NORTH, of Rockford, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The Atwood Vacuum Machine Company of Rockford, Illinois, was building a new factory. The Varner Well and Pump Company of Dubuque, Iowa, was in the business of drilling wells. The Atwood Company entered into a contract with the Varner Company to dig a well on their new factory site. The contract entered into between the parties was a confirmation of telephone calls between them, and the Varner Company agreed to dig a well at the rate of $10.50 per hour. The well was dug and accepted and paid for by the Atwood Company. Several months after the well was finished it was discovered that there was sand and gravel in the water and that the water could not be used for manufacturing purposes. The Atwood Company had the well repaired and sued the Varner Company for the damage which they claim they sustained. The case was heard in the circuit court of Winnebago county before the judge without a jury and after hearing the evidence he decided that the defendants were not liable and entered a judgment in their favor, and

it is from this judgment that the appeal has been prosecuted.

A letter from the Varner Company to the Atwood Company on January 26th in part is as follows: "A supplement to our proposal of January 26th and in accordance with your request of January 24th we are pleased to submit the following proposal for drilling well on time and material basis. For the furnishing of all drilling tools, drill cable, all steel drilling machine as manufactured by the Bucyrus-Erie Co., and the services of skilled drilling crew, all additional equipment such as welder and additional tools as necessary to successfully drill said well for the sum of $10.50 per hr." Another letter of the same date contains the exact wording of the above quotation. Before this letter was written, the Varner Company had submitted another proposition to the Atwood Company for drilling the well, but the Atwood Company wrote them that they would prefer to have the well drilled on a time basis and the above letters followed that negotiation. The Atwood Company accepted this offer and the well was started.

After it was found that the water could not be used, the Atwood Company had the well repaired, and it was necessary to have the sand and gravel in the water system of the factory cleaned out. Then before the well was repaired they had a water main connected with the City of Rockford Water Company. These are all claimed as damages in the suit.

██ It is first claimed by the appellants that the defendants breached their contract in failing to successfully drill the well, and also failing to provide a skilled drilling crew as required by the contract. The Atwood Company introduced evidence tending to show that the man who had charge of drilling the well for the Varner Company was not a competent well man, and they were permitted to introduce in evidence state-

ments made by Mr. Harry Lewis whose position with the Varner Company was shown to be not connected with the Varner Company at the time the well was drilled, but later was connected with it but under a different name at the time the well was repaired. Mr. Lewis was not called as a witness by either side to the controversy, but the witnesses were permitted to say what he told them in regard to the competency of the men who had charge of drilling the well, and also of the condition of the well. This evidence was hearsay and ordinarily not admissible, but whether the court did, or did not consider this evidence, is immaterial, as he found the issues in favor of the defendants. It is the province of the court in hearing the witnesses testify to judge their appearance on the stand, and the credibility of their testimony, and unless this court can say that his findings are manifestly against the weight of the evidence, we will have to accept his decision as final.

Mr. Atwood, the president of the Atwood Company, had an active part in deciding how deep the well should be and otherwise directing some of the operation. There was discussion in regard to the depth the well should be drilled. The Varner Company advised going down twelve hundred feet, but Mr. Atwood said there had been wells drilled within a block of where this well should be and about seven hundred feet was all that was necessary, and he told the driller to go ahead and he would tell them to stop when it was as deep as he wanted them to go. When about the seven-hundred-foot mark was reached, they struck what appeared to be a strong vein of water and Mr. Atwood said that was deep enough. The well driller advised that the well be tested, but Mr. Atwood testified: "I was willing to take a business chance. I did not care to drill any deeper nor did I care to have the pump

tested on the water because I would accept it," and on another occasion he said: "We are not going to the expense of a flow test because I am satisfied there is enough water." The appellants contend that it was the duty of the Varner Company to advise the Atwood Company that the well should have been tested to see whether there was any sand or gravel in the water. Mr. Atwood seemed to have been very positive in his statement that he did not want to go to the expense of having the well tested, and seemed to be well satisfied that he knew about wells. We find no basis for the assumption that it was the duty of the well driller to advise the Atwood Company about having the well tested for sand and gravel. If it had been tested for sand and gravel in the water at the time the well was completed, no doubt a great deal of expense would have been saved the Atwood Company by doing so, for then they would have discovered the sand and gravel immediately, while the well drilling apparatus was still on the job and the expense that followed, except for repairing the well, could have been eliminated.

It is argued strenuously by the appellants that the clause in the contract where it is stated that the Varner Company would furnish the services of skilled drilling crew, all additional equipment such as welder and additional tools as necessary to successfully drill said well, etc., meant that they guaranteed to drill a well that would be a success, and that the water would be free from sand and gravel. This appears to us to be a strained construction of the language used in the letter. No case in Illinois has been cited that is similar to the one now before us, but in the case of *Butler v. Davis,* the Supreme Court of Wisconsin reported in 96 North Western 561 [119 Wis. 166], a similar question was presented to that court, and there we find the following: "The Court charged the jury that in a contract of well drilling there is no implied undertaking

575

that water shall be obtained, or that the well shall be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner, with such skill as may ordinarily be expected from those who undertake such work. It is contended that this instruction is erroneous, and that an agreement to obtain a sufficient supply of good water is implied in every contract to dig or bore a well. We are referred to no authority in support of this contention, nor have we found any. The uncertainty of obtaining a supply of good water, however skillfully the work is done, is matter of common knowledge. If well diggers were to be held to guaranty such results whenever they undertake to dig a well, we think there would be a great scarcity of diggers. We have no hesitation in approving the principle laid down by the trial court upon the subject."

What is said there, is very applicable to the facts in the instant case. As before stated, there was evidence both in favor of the plaintiff and the defendant, and it was the duty of the trial court to pass upon that evidence, and he has found that the evidence preponderates in favor of the defendants. After an examination of the evidence as abstracted, it is our conclusion that his findings are correct, and therefore the judgment should be and is affirmed.

*Affirmed.*

Dove, J., concurs.

Anderson, J., took no part.