122 So.2d 713

**Eldon BARNES**

v.

**T. T. SELVAGE.**

**8 Div. 715.**

Court of Appeals of Alabama.

Oct. 4, 1960.

Lusk & Lusk, Guntersville, for appellant.

Starnes & Starnes, Guntersville, for appellee.

CATES, Judge.

Selvage, a well driller, sued Barnes on common counts for (1) work and labor, and (2) account, and got a verdict and judgment for $800.

The trial was on the traversed complaint and Barnes's special plea which set up the terms of a contract for the well, concluding that Barnes was not thereby required to furnish pipe to case off gas and that Selvage had not (as he agreed) drilled "a well of lasting, potable water of sufficient quantity that an electric pump could be used therein."

In July, 1957, Selvage, who by trade was a "welder following construction," had his father, P. C. Selvage, as "kinda foreman" in charge of a "water well drilling concern" operating on Gunter's Mountain.

The appellee's brief did not accept the appellant's statement of facts as controlling. Rather Selvage says:

P. C. Selvage made the contract in behalf of the plaintiff, T. T. Selvage. There is a conflict in the testimony of Selvage and Barnes as to what they agreed upon.

P. C. Selvage's version of the agreement was that he was to drill a well regardless of depth for $2.50 a foot with the plaintiff to furnish any necessary casing.

Barnes's version of the agreement was that he was to pay $2.50 a foot only, and

that Mr. Selvage would guarantee "water." Neither of the parties testified that they agreed what a sufficient amount of water would be.

After the well had been dug 260 feet, Selvage says that Barnes "tried to renege and amend the original agreement, which the plaintiff would not agree to." At the 400-foot stage, thirty-six drill buckets of water were drawn off, but Barnes wanted more and ordered the drilling to go on.

Selvage testified that after gas showed up in the well at 570 feet, he told Barnes that the well needed casing to keep out gas. Barnes's position was that he would not buy casing "for that deep a well." Selvage asked, "What do you want me to do?" Barnes answered, "Well, you can just drill or quit." Selvage moved his rig off Barnes's farm.

When his attorney was examining him, Barnes said:

"Well, that was Saturday we was checking it and I asked him what he thought about it. He asked—I believe he asked me what I wanted to do about it. I said, 'Well, I don't know anything to do about it. You don't have my water. As far as I know you are not drilling any more. It is as far as you can go.' He said, 'We have got to case it out. We want you to buy your casing and see if we can case this gas out.' I said, 'Well, I won't put $1,000.-00 worth of casing in a dry hole.' I said, 'You can go on and drill and get me water then we will put the casing in.' I said, 'You can put the casing in if you get me water. I will pay for the drilling and the casing.'"

To contradict Selvage's version, Barnes testified:

"Q. Tell the jury what your talk was with P. C. Selvage. A. Well, he asked —we were talking there about him drilling. I asked him how do you drill. He said he drilled for $2.50 a foot and guarantee you water. I told him I wanted to put a pump in it for house use and add a bathroom later on if I got enough water to carry it. That's what I wanted.

"Q. He said it would? A. Yes, sir. He said he would guarantee water.

"Q. At that time was there anything said at all about casing or gas or anything of that sort? A. No, sir. Nothing was mentioned on either of those points."

Barnes's first assignment of error contends that in questioning Mr. P. C. Selvage on cross-examination the defense should have been allowed to ask why Mr. Selvage did not drink some of the water which came out of the well. In Becker Roofing Co. v. Carroll, 37 Ala.App. 385, 69 So.2d 295, 300, it is said:

"A party may be examined as to his motive, reason, intent or purpose in doing a certain act where these acts have been injected into the evidence by the opposing party. * * *"

We consider there was no prejudicial error in sustaining the objection because of the witness's further testifying that the water smelled of gas or sulphur. We pretermit consideration of a distinction between motivation to do something and not to do it.

On the second assignment of error, complaint is made of overruling an objection to a question put to Selvage's brother as to whether Barnes made any mention to him (the brother) about putting a pump in the well.

It is unnecessary to consider this point since the record shows that the answer which was negative came in before the objection was made.

The third assignment rests on a question put to Selvage on redirect examination, "If the casing had been bought for the well you would have put it in the well, is that right?" The evidence sought to be

elicited had already theretofore been received into evidence without objection.

■ The fourth assignment is posited upon an objection to a voluntary statement made by the witness, Mr. Johnny Barnes, the defendant's father, that P. C. Selvage came to his house and said, "Well, those boys have ruined that well." [1] The court properly sustained the objection on the principle that the agent's declaration should accompany and illustrate an act of agency within the line and scope of his authority. We construe the statement was merely narrative and not even a message for the defendant. Ellis Motor Co. v. Hibbler, 219 Ala. 53, 121 So. 47; C. C. Snyder Cigar & Tobacco Co. v. Stutts, 214 Ala. 132, 107 So. 73.

■ The fifth assignment argued complains of the trial judge's overruling an objection because of argumentativeness to the following question put Barnes on recross examination: "At any time at any stage in the drilling of that well, did you offer T. T. Selvage $2.50 a foot for every foot he had drilled?"

It is argued that the principle of Wise v. Schneider, 205 Ala. 537, 88 So. 662, where it was held improper for a witness to be asked if it were not a driver's duty to drive to the right at a particular point, applies here, in that this question implies a duty by Barnes to pay Selvage at the unit price of $2.50 a foot, with the further implication that this is without regard to whether or not water was found.

We consider that, in its ordinary connotation, the word "offer" would not be confused by a jury with the legal concept of "offer and acceptance." There was no error in the ruling of the court in the face of the objection as framed.

The sixth, seventh, eighth, ninth and tenth assignments are argued on the theory of the sufficiency of the evidence to support the verdict.

■ At the outset, we refer to what seems to be the general rule as stated in Davis v. Merrick, 66 N.M. 226, 345 P.2d 1042, 1043:

"In a contract for drilling a water well, there is no implied undertaking that water will be obtained or that the well will be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner with the ordinary skill of those who undertake such work. Butler v. Davis, 1903, 119 Wis. 166, 96 N.W. 561; Littrell v. Wilcox, 1891, 11 Mont. 77, 27 P. 394; Harrelson v. Fitzgerald, 1925, 3 La.App. 510; Omaha Consol. Vinegar Co. v. Burns, 1896, 49 Neb. 229, 68 N.W. 492; Sweezy v. O'Rourke, 1919, 226 N.Y. 378, 123 N.E. 752."

See also the early Alabama case of Stewart v. Weaver, 12 Ala. 538.

Indeed, we consider that Barnes himself recognized that an express stipulation as to fitness and purpose was required by his allegations in his plea 2, i. e., that it was agreed that the water would be potable and sufficient for an electric pump.

■ This left a question of what the parties agreed to as a proper matter of proof for decision by the jury. The trial court weighed the sufficiency of the evidence on motion for new trial. The judgment below comes here not only with the weight attached to the verdict as a finding of fact, but also the presumption of its being sup-

1. The record (p. 45) shows: "Q. Were you there when they hit gas? A. No, sir. I was at my home and Peyton Selvage come down there and says, 'Well, those boys have ruined that well'. I said, 'What have they done'. He said,—Mr. Starnes: We object. Doesn't show what time it was, whether he was on official business of the manager at that time. You can't take a servant and show any statement he makes and bind the master. The Court: Sustain the objection. Mr. Lusk: It was in the scope of his duty. We except."

ported by substantial evidence by virtue of the order overruling the motion for new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The judgment below is due to be Affirmed.