PREMCO DRILLING, INC. *v.* MAILLET BROS. BUILDERS, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 16-647-3040

Argued October 25—decided December 31, 1965

*George V. Steiner,* of Hartford, for the appellant (defendant).

*David C. Bagley,* of Hartford, for the appellee (plaintiff).

DEARINGTON, J. The plaintiff recovered a judgment on its complaint and also on the defendant's counterclaim. This appeal by the defendant is from the judgment on the counterclaim. The defendant assigns error in the refusal of the court to correct its finding by striking certain paragraphs and adding others.

The following facts were found: The plaintiff was engaged in the business of drilling wells, and the defendant was in the business of building houses. On or about November 21, 1963, the parties entered into an oral contract wherein the plaintiff agreed to drill a well for the defendant. Although the plaintiff urged the execution of a written contract, the defendant refused such overtures. After drilling 122 feet, the plaintiff struck water flowing at the rate of three gallons a minute, which the defendant stated was adequate. The plaintiff submitted its bill in the amount of $1032.50 and was paid in February, 1964. Thereafter on May 12, 1965, the defendant informed the plaintiff that the water was unfit for consumption and requested the plaintiff to return with its drilling equipment and drill farther. In compliance with that request, the plaintiff returned and drilled an additional 377 feet without discovering a satisfactory amount of water and, thereafter, stopped drilling and removed its equipment. The plaintiff submitted a bill based on the same rate as

used in the previous drilling, but the defendant refused to pay the bill, claiming that the payment was contingent upon discovery of an adequate supply of pure water.

The court arrived at the following conclusions: (1) The plaintiff performed the work recited in the pleadings. (2) The defendant refused to enter into a written contract. (3) The plaintiff did not guarantee to find an adequate supply of water. (4) The plaintiff did not guarantee the purity of the water. (5) The defendant did not sustain its burden of proof on the counterclaim by a preponderance of the evidence. (6) Judgment should be rendered for the plaintiff in the amount of $1508 and costs.

The defendant in its counterclaim alleged that following the first drilling the water became contaminated because sand, gravel or other foreign substances appeared in it, rendering it unfit for household use. As a result of such contamination the defendant claims the plaintiff breached its agreement to furnish water fit for household consumption. By way of damages the defendant demands the return of the $1032.50 it paid the plaintiff for the first drilling.

The defendant sought unsuccessfully to strike the part of the finding relating to its contacting the plaintiff and informing it that the water was unfit for consumption and requesting further drilling, and the finding that the plaintiff in compliance with the request drilled an additional 377 feet. The defendant contends that these facts were found without evidence and in language of doubtful meaning. There was evidence that the parties met after the first drilling, at which time the defendant claimed that the water was unfit for consumption and agreed that the drilling be continued. The language used by the court was clear and unequivocal, and it com-

mitted no error in refusing the defendant's request in this respect. The defendant further sought to strike the part of the finding relating to the second drilling on the ground that it pertained to the plaintiff's complaint, whereas the appeal is limited to the defendant's counterclaim. But even if we assume that the defendant's contention is correct, the error, if any, was harmless, since the fact was immaterial to the determination of the issue raised under the counterclaim.

The defendant sought to add to the finding that the water became unfit for consumption as a result of the first drilling because sand appeared in it. The defendant claims that the sand resulted from improper well drilling and "[t]he plaintiff had agreed to prosecute the work under its contract in good workmanlike manner." In this respect the defendant contends that well water can be contaminated in one of two ways: either at its source or after it enters the well. The latter source of contamination, the defendant maintains, may indicate a defectively constructed well. Such an alleged defect was the gravamen of the counterclaim. Having asserted the claim, the defendant had the burden of establishing it. *Gager* v. *Carlson,* 146 Conn. 288, 290; *Wetherell* v. *Hollister,* 73 Conn. 622, 626.

The defendant contends that facts relating to the presence of sand in the water should have been added to the finding, for they would have supported a conclusion of improper well drilling and hence a breach of contract. In the absence of an agreement, there is no implied warranty on the part of a driller as to the quality of water which might be obtained in the event the driller strikes water. *Atwood Vacuum Machine Co.* v. *Varner Well & Pump Co.,* 3 Ill. App. 2d 571; *Schofield* v. *School District,* 105 Kan. 343; *Koch* v. *Fishburn,* 90 Ind. App. 287; *Skalsky* v.

*Johnson,* 138 Minn. 275; *O'Haire* v. *Breton,* 102 N.H. 448; *Sweezy* v. *O'Rourke,* 226 N.Y. 378; *Charles* v. *Umentum,* 261 Wis. 647. See note, 90 A.L.R.2d 1346, for general statement on well-drilling contracts; 56 Am. Jur., Waters, § 146. The only evidence relating to the possible causes of the sand in the water was derived from the two witnesses produced by the plaintiff, one of whom was an expert in well drilling. They testified that sand could come from several possible sources, one of which was a natural cause beyond the control of a driller. Such evidence was insufficient to show that the plaintiff had failed to perform its contract in this respect. "An expert's opinion must be in terms of the certain or probable, and not of the possible." 20 Am. Jur., Evidence, § 795. It should be noted that the plaintiff's expert was not cross-examined. The only witness produced by the defendant stated that he did not know what defect, if any, caused the sand to appear in the water. On workmanship, it has been held that in a well-drilling contract there is an implied warranty on the part of the driller that the work shall be done in a workmanlike manner with such skill as may ordinarily be expected from those who undertake such work. *Barnes* v. *Selvage,* 41 Ala. App. 106; *Cameron* v. *Sisson,* 74 Ariz. 226; *Rose* v. *Parker,* 5 N.J.L. 780; *Davis* v. *Merrick,* 66 N.M. 226; *Borg* v. *Downing,* 221 Wis. 463. In the instant case, there was no evidence of improper drilling or improper equipment or faulty workmanship. This brings the testimony offered within the maxim of evidence which says that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted. *Katz* v. *Commercial Bank & Trust Co.,* 102 Conn. 57, 60.

The court committed no error in refusing to add to its finding material of such a conjectural and

speculative nature. Even if the court had added such material, it could not have lawfully drawn a conclusion that a breach of contract occurred. A conclusion cannot be based on guess or speculation. *Bruce* v. *McElhannon,* 141 Conn. 44, 48; Maltbie, Conn. App. Proc. § 159. The burden of proof was upon the defendant, and we cannot, on the evidence before the court, hold that the court erred in finding that the defendant had not shown by a fair preponderance of the evidence that the sand in the water had resulted from a breach of contract. The determination of this issue upon the evidence was for the trial court. *Barker* v. *Curtis,* 98 Conn. 761, 763.

There is no error.

In this opinion KOSICKI and JACOBS, Js., concurred.