Jacob J. Kocian *v.* Albert T. DeVito, Jr., et al.

Appellate Division of the Circuit Court

File No. CV 1-674-13436

Argued July 29—decided October 11, 1968

*Edward J. Zamm,* of South Norwalk, for the appellant (plaintiff).

*William D. Allen,* of Norwalk, for the appellees (defendants).

Kosicki, J.   The plaintiff brought suit on the common counts and, before any default or judgment was rendered thereon, filed a bill of particulars of the items of his claim arising out of materials and labor furnished to the defendant in the performance of a contract or contracts in drilling three wells for the defendants. The action was in accordance with General Statutes § 52-113. Practice Book §§ 141, 800. The defendants filed a general denial. The verified bill of particulars contained the essen-

tial facts in support of the plaintiff's claim. No special defenses were alleged in the pleadings. It would necessarily follow that if the plaintiff established his case by a fair preponderance of the evidence he was entitled to judgment.

The finding of facts, with such additions and corrections as are warranted, shows the following. The plaintiff is an artesian well-drilling contractor and has engaged in that business since November, 1947. On May 6, 1965, the plaintiff agreed orally with the defendants to drill an artesian well on the defendants' property at the rate of $4 a foot plus the expense of the casing. The well was dug to a depth of 400 feet and the amount of water obtained was considered insufficient as to quantity and unsatisfactory as to quality for domestic use because of its iron content. Further drilling was discontinued. The total bill rendered for the services and materials furnished was $1663. The work had been fully performed until terminated with the acquiescence of both parties. The plaintiff then, at the defendants' request, drilled a second well on another lot of the defendants' property, under the same terms as were contained in the oral agreement pertaining to the first well. The second well was drilled to a depth of 400 feet and produced little water. The supply was insufficient. The total cost, based on the oral agreement referred to, was $1663. The services were rendered on May 13, 1965, and a bill for the amount due was sent to the defendants. Neither bill was paid.

About a year later, the parties agreed orally that the plaintiff would drill a third well for the defendants on a still different lot. It was agreed that another kind of drilling equipment, known as the "chopper type," would be used. This was slower in operation, and the price agreed on was $4.50 per

foot plus the cost of the casing. The third well was dug to a depth of 152 feet and the casing installed. The total cost at the agreed price was $1130.65, and a bill for that amount was submitted to the defendants. Admittedly, the water in the third well was adequate in quantity and satisfactory in quality.

The total bill for services rendered and materials furnished by the plaintiff was $4456.65, toward which the defendants made two payments of $1000 each, one before the drilling of the third well and the other after performance on all three wells had been completed. The court adjudged that the balance due the plaintiff was $663 and not the amount sued on, which was the balance of $2456.65 after the allowance of $2000 on the total above stated. The court concluded in its finding that "[w]here the parties *seem* to agree that the 'going rate' for digging a well by rotary drill is $4.00 per foot depth, the parties contemplated some negotiated settlement on the first two wells since neither of them was satisfactory [italics supplied]." There was no dispute that the parties had in fact agreed on the "going rate" in each instance, and the amount in suit was based on this rate.

The plaintiff attacks part of the court's finding of subordinate facts, the conclusions reached, and the judgment rendered, on the ground that the facts found were not supported by the evidence and that the court applied to those facts an erroneous rule of law material to the case. *Yale University* v. *Benneson,* 147 Conn. 254, 255; *Monick* v. *Greenwich,* 144 Conn. 608, 611; *Jack Torosian, Inc.* v. *Guastamachio,* 139 Conn. 754, 757; *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 692. We are of the opinion that the finding by the court that "the plaintiff did not guarantee water for any of the wells dug" is dispositive of this appeal. See such cases as *Premco*

*Drilling, Inc.* v. *Maillet Bros. Builders, Inc.,* 3 Conn. Cir. Ct. 519, 522; *Durfee* v. *Parker,* 90 Idaho 118, 121; *McClure* v. *Briggs,* 85 Idaho 327, 330; *Norbeck & Nicholson Co.* v. *Mallock,* 26 S.D. 54, 56; *Bell* v. *Currie,* 404 S.W.2d 321 (Tex. Civ. App.); *Butler* v. *Davis,* 119 Wis. 166.

"One of the few general rules which can safely be formulated is that there is no implied warranty on the part of a driller that the well will be productive, or, if productive, as to either the quantity or quality of the water obtained . . . , but there is an implied warranty on his part that he will perform the work in a workmanlike manner, with such skill as may ordinarily be expected from those who undertake such work . . . ." Note, 90 A.L.R.2d 1346, 1352 § 1. "It has generally been held that in the absence of a provision in a well-drilling contract guaranteeing the results of the undertaking there is no implied warranty on the part of the driller as to the quantity of water which will be obtained." Id., p. 1353 § 4, and cases cited; p. 1375 § 18. "It has generally been held that in the absence of a provision in a well-drilling contract specifying the quality of the water to be procured, there is no implied warranty on the part of the driller as to the quality of such water." Id., p. 1355 § 5, and cases cited.

No claim was made by the defendants, and therefore no inference could be drawn by the court, that the drilling of any one of the three wells was performed in an unworkmanlike manner or that the performance lacked the skill ordinarily expected of those undertaking such work. Without citation of any authority, the defendants had adopted the position, sustained by the conclusions of the court, that the plaintiff was an "expert" on the finding of underground waters and where the project failed he was

either entitled to no compensation or to some compromised amount of which there was not an iota of evidence. Nor could such evidence, produced by the defendants and credited by the court, legally support the conclusion reached. The oral contracts as set out above had been duly performed. There was no guarantee in any instance of the result. After full performance, the plaintiff was entitled to the amounts pleaded. Even though the court should credit the defendants' testimony that there was some vague mention of a compromise, the fact is admitted and undisputed that no discussion of a compromise ever took place and that an alteration in the performed agreements, by reduction of the prices due, was at no time arrived at. There was no meeting of minds from which a new contract could be derived. "The facts . . . do not support the judgment which, in effect, was a conclusion that an enforceable contract had been negotiated. The legal construction of a contract presents a matter of law for the court. *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 274 . . . and cases cited. Terms cannot be added to a contract by interpretation. *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 200 . . . ." *Dotolo* v. *Petrucelli,* 152 Conn. 654, 656. The court cannot make a contract for the parties. " 'The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete.' " *New Haven Tile and Floor Covering Co.* v. *Roman,* 137 Conn. 462, 464.

We may also add that, since the only agreements in the case had already been fully performed, there was no consideration for the new contracts found by the court to have been entered into, and the judgment cannot be sustained. "An agreement without consideration is a mere indulgence and unenforce-

able. It does not prevent the creditor from pressing his claim . . . ." *State ex rel. McClure* v. *Northrop,* 93 Conn. 558, 566; see *Calamita* v. *The Tradesmens National Bank,* 135 Conn. 326, 331; *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 701. Particular attention is directed to the case of *Wendling* v. *Snyder,* 30 Ind. App. 330, 332, and note, 90 A.L.R.2d 1346, 1375 § 18.

"Where corrections in a finding destroy the essential basis of the trial court's decision, a new trial is properly ordered." *Thomas F. Rogers, Inc.* v. *Hochberg,* 143 Conn. 22, 25; Maltbie, Conn. App. Proc. § 349. We find here that the errors were essentially made in the application of the rules of law to the facts which were found by the court or admitted or undisputed by the parties. It would, therefore, appear that there would be no issue of fact to be remanded for a new trial.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover $2456.65.

In this opinion JACOBS and MACDONALD, Js., concurred.