**ATLAS CONSTRUCTION CO., INC.,**
Appellant (Plaintiff below),

v.

**AQUA DRILLING COMPANY,** Appellee
(Defendant below).

No. 4634.

Supreme Court of Wyoming.

Jan. 19, 1977.

Edwin H. Whitehead of Urbigkit, Halle, Mackey & Whitehead, Cheyenne, for appellant.

Robert L. Duncan, Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

## FACTS

Pursuant to an oral contract between appellant-Atlas Construction Co., Inc., and appellee-Aqua Drilling Company, Aqua drilled a number of water wells for the domestic supply of houses constructed in Cheyenne by Atlas. The purchasers of five of the Atlas houses encountered problems with insufficient water production from their wells. In response to Atlas' insistence that corrective action be taken, Aqua drilled one new well and bailed sand out of the existing wells numerous times. Atlas concluded that Aqua had not taken the action necessary to correct the problem and employed a second drilling firm, Alpine, to drill new wells for the homeowners. In this action Atlas seeks reimbursement from Aqua for those sums it was forced to expend for the services of Alpine.

The trial court found generally for the appellee Aqua and we affirm.

Atlas assigns the following grounds for error:

"I

"The evidence in the cause supports the proposition that there was a contract between the parties to supply wells which would provide an adequate source of water for residential use and there was a breach of that contract.

"II

"The purchasers of the five new homes received from the vendor an implied warranty that the home was constructed in a reasonably workmanlike manner and fit for habitation.

"III

"The general law concerning drilling water wells is inapplicable in this case because of the implied warranty of habitability.

"IV

"Conclusion by district court that the wells were properly drilled was not based upon the fair preponderance of the evidence."

The issues for our decision may be reduced to these two following inquiries:

*Breach of Contract*

(1) Did Aqua fail to discharge its obligation under the contract?

*Breach of Warranty*

(2) Does the subcontractor, Aqua, make the same warranty to Atlas as Atlas, as a general contractor, makes to its homeowner-customers?

*Breach of Contract:*

Atlas contends that it entered into a contract with Aqua whereby Aqua agreed that each well would be drilled to a depth and completed in a manner which would provide an adequate water supply for residential purposes. Atlas charges Aqua's obligations under the agreement were not fulfilled since it did not deliver the wells in such condition as would furnish the householders an adequate supply of domestic water.

Aqua responds to this argument by asserting that Atlas limited the maximum depth of the wells to 200 feet and, in any event, all of the wells were in fact drilled to at least that depth or as deep as was necessary to realize the desired result. Aqua further urges that all wells originally produced adequate water and the subsequent failure of the wells was due to Atlas' refusal to periodically pump and produce the wells according to Aqua's instructions.

There is evidence in the record to support these following factual conclusions:

Atlas instructed Aqua to drill no deeper than 200 feet, and in all cases adequate water was discovered and produced within the 200-feet limitation. The wells were drilled and completed in a workmanlike manner, the reason for the production failure being the neglect of Atlas to pump and produce the wells as instructed by Aqua.

On all of these factual issues there was dispute, but the oft-repeated appellate rule which must be applied in such circumstances is:

". . . We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. [Citing case.]" *Stock v. Roebling*, Wyo., 459 P.2d 780, 784. See also *Tavares v. Horstman*, Wyo., 542 P.2d 1275; and Keys 931(1) and 989, Appeal and Error, West's Wyoming and Pacific Digests.

■ The facts being in dispute, the question of breach of contract was for the trial court. There was sufficient evidence to support that court's decision that the agreement was not breached and we will not disturb that judgment here.

*Breach of Warranty:*

The appellant argues that the rule of *Tavares v. Horstman*, supra, is applicable as between Atlas and Aqua. In *Tavares*, the

suit was between the purchaser and the builder of a new home. The builder had agreed to install a septic tank as a part of the plumbing and the system failed soon after installation. In holding the builder to have breached an implied warranty of fitness, we said:

> "We further hold along with a vast majority of courts that where a vendor builds new houses for the purpose of sale, the sale carries with it an implied warranty that it is constructed in a reasonably workmanlike manner and is fit for habitation. . . ."

■ This is not the applicable rule as between those who contract for the drilling of a water well. The driller does not impliedly warrant that he will find and produce water when he agrees to drill a well. It is said in 17A C.J.S. Contracts § 494(2) at p. 717:

> ". . . [U]nder a contract to dig, drill, or sink a 'well,' there exists no implied agreement that water shall be reached."[1]

We have held in a water-well case (*Terry v. Moore*, Wyo., 448 P.2d 601 (1968)) that there can be no warranty unless there be a representation relied upon which becomes the basis for the bargain. There was no express or implied warranty of production upon the part of Aqua which induced Atlas to hire it to drill the water wells. We find no evidence in the record that Aqua made any representations whatever concerning the finding and production of water in the wells in question here.

A recent case from North Carolina is peculiarly appropriate to our consideration of the implied-warranty issue. In *Lyon v. Ward,* 28 N.C.App. 446, 221 S.E.2d 727 (February 4, 1976), the action was brought by the home purchaser against the builder-vendor for breach of warranty of fitness. The plaintiff charged that the house was not constructed in a workmanlike manner and free from structural defects in that one of the fixtures, i. e. the water well, would not supply adequate water for necessary domestic purposes. The defendant-builder filed a third-party action against the water-well driller upon an implied warranty of fitness theory.

In holding for the homeowner in his suit against the builder, the North Carolina court quoted *Tavares v. Horstman,* supra, together with other recent cases considering the question, and said:

> ". . . In relaxing the rule of *caveat emptor,* North Carolina has followed the developing trend in the United States which recognizes that there ought to be an implicit understanding of the parties when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used. *Tavares v. Horstman,* 542 P.2d 1275 (Wyo.Sup.Ct.1975); *see also Humber v. Morton,* 426 S.W.2d 554 (Tex.1968); *Bethlahmy v. Bechtel,* 91 Idaho 55, 415 P.2d 698 (1966); *Schipper v. Levitt & Son's Inc.,* 44 N.J. 70, 207 A.2d 314 (1965); *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964); *McKeever v. Mercaldo,* 3 Pa.D. & C.2d 188 (1954);

1. The footnote to this proposition refers to the following authorities:

"Ala.——*Barnes v. Selvage,* [41 Ala.App. 106] 122 So.2d 713.

"N.H.——*O'Haire v. Breton,* 102 N.H. 448, 159 A.2d 805.

"N.M.——*Davis v. Merrick,* 66 N.M. 226, 345 P.2d 1042.

"Pa.——*Ferguson v. Burge,* 194 Pa.Super. 202, 166 A.2d 288.

"Wis.—— . . . *Borg v. Downing,* 221 Wis. 463, 266 N.W. 182.

"9 C. J. p. 747 note 72.

" 'The uncertainty of obtaining a supply of good water, however skillfully the work is done, is a matter of common knowledge. If well diggers were to be held to guaranty such

results whenever they undertook to dig a well, we think there would be a great scarcity of diggers.'

"Ill.—*Atwood Vacuum Mach. Co. v. Varner Well & Pump Co.* 122 N.E.2d 834, 836, 3 Ill. App.2d 571.

"Wis.——*Charles v. Umentum,* 53 N.W.2d 706, 709, 261 Wis. 647—*Butler v. Davis,* 96 N.W. 561, 562, 119 Wis. 166.

\* \* \* \* \* \*

"Implement dealer who was not engaged in well-drilling business but was directed to install pump did not have a duty to produce water before becoming entitled to recover for materials furnished and services rendered.

"Wis.—*Bula v. Oneida Farms,* 33 N.W.2d 208, 253 Wis. 48."

*and see,* 25 A.L.R.3d 383 (1969) and authorities cited therein. As said in *Humber v. Morton, supra* [426 S.W.2d] at 562, 'The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work.'"

The court denied the builder-third-party plaintiff's complaint against the water-well driller for breach of implied warranty with the comment:

". . . The expectations of a builder-vendor who subcontracts the work of drilling a well are entirely different from the expectations of a prospective home purchaser. . . ."

Indeed they are. The difference is this:

In rejecting the doctrine of caveat emptor in the field of home buying we said in *Tavares, supra:*

". . . The ordinary home buyer is not in a position, by skill or training, to discover defects lurking in the plumbing, the electrical wiring, the structure itself, all of which is usually covered up and not open for inspection.

"A home buyer should be able to place reliance on the builder or developer who sells him a new house. . . .

"It ought to be an implicit understanding of the parties that when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used—that it is reasonably fit for habitation. . . . There is no need for the buyer to be subjected to the harassment caused by defects and he deserves the focus of the law and its concern. . . ."

These same reasons do not serve to protect a builder of homes who hires a well-driller. The home builder either has the knowledge or is chargeable with having the knowledge which will enable him through agreement to make whatever arrangement he wants with the water-well driller. They are both in business and this is a part of doing business. It is the builder's duty to convey to his drilling contractor the terms of any agreement he wishes to make. If he wants to make a contract which conditions payment upon discovery and production, he can do that in a way which will protect him and, at the same time, make his wishes known to the driller. This gives the driller the opportunity to accept or reject the contractor's offer. The companion concept is, as we have held in *Terry v. Moore, supra,* that the builder may not fail to make his expectations known to the driller and rely, instead, upon the theory of implied warranty in those situations where the driller has not made representations which have been relied upon by the contractor.

■ For the reasons and under the authority set out herein, the implied warranty of fitness doctrine which protects the purchaser when he buys his home from the builder does not come to the rescue of the builder who, with the presumed experience which allows him to protect himself, and having full knowledge of what he wants, needs, and expects, contracts with another for the drilling of a water well.

Affirmed.