OMAHA CONSOLIDATED VINEGAR COMPANY, APPELLANT, v. JOSEPH BURNS, APPELLEE.

FILED OCTOBER 6, 1896.    No. 5473.

1. **Contract to Sink Tubular Well: CONSTRUCTION: SUPPLY OF WATER.** The contract upon which the cross-petition in this action declared construed, and *held* to be an agreement under which the defendant was to sink a tubular well of prescribed dimensions, until a flow of two thousand gallons of water per hour was obtained, not to extend, however, beyond a depth of five hundred feet, at any ascertained or fixed compensation for such further extension, and not in any event to extend beyond a depth at which the company, the employer, should give the defendant notice to quit work.

2. ———: TERMINATION: AMOUNT OF RECOVERY. The cross-petition declared on a completed contract. During the progress of the work under the contract the company notified the defendant to stop any further work on the well. With the requirements of such notice the defendant complied. *Held*, That under the pleadings he could recover the contract price for the number of feet of the well then completed as to dimensions, casing, etc., in accordance with the contract, and for no more.

3. ———: SUPPLY OF WATER. The contract in question did not provide that any specific quantity or flow of water should be obtained as a condition precedent to or upon which depended defendant's right to compensation for such labor as he performed or materials he furnished in the completion of any portion of the well according to contract, and further, in this connection, that the contract was enforceable notwithstanding its omission in respect to the condition to which reference has just been made.

4. ———: ———. *Held*, That under the facts and circumstances shown

in evidence, the contract by virtue of which defendant demanded a recovery was binding on the company against which the claim was sought to be established.

5. Mechanics' Liens: TUBULAR WELLS. The account for labor performed and materials furnished in sinking a tubular well affords no foundation for a claim for a mechanic's lien on the premises on which the improvement is made.

6. ——: ——. The former opinion in this case, to the extent the construction given the contract between the company and defendant differed and was in conflict with the construction herein adopted, is reversed.

REHEARING of case reported in 44 Neb., 21.

*Mahoney & Smyth*, for appellant.

*Charles Offutt, contra.*

HARRISON, J.

The defendant in this action filed a mechanic's lien in the proper office in Douglas county against the property of plaintiff, the account on which the claim of lien was predicated being for work performed and material furnished in and about the sinking of a "tubular" well in the property of plaintiff company in Omaha. This action was instituted by the plaintiff company, the object being to secure the cancellation of the lien, or its removal as an alleged cloud on the company's title to the property. The defendant filed a cross-bill, or petition, in which he asked that the amount due him from the plaintiff might be ascertained and adjudged, and his lien therefor foreclosed, etc. To this cross-petition the company pleaded and of the issues there was a trial, the result of which was favorable to the defendant. The company appealed to this court, and on hearing of the case here the judgment of the district court was reversed. (See 44 Neb., 21.) A motion for rehearing was filed and allowed, and the case has been again submitted for decision. There was a sufficiently full statement of the issues, and such facts as were and are necessary to an understanding of the case,

in the former opinion, to which we refer the reader for such statement, not deeming a repetition necessary here. The contract by virtue of which the defendant alleged he did the work and furnished the materials was as follows:

"JOSEPH BURNS: Please sink a tubular well of seven-inch lap welded iron pipe at our vinegar factory in Omaha, and continue sinking the same until you get a water supply of 2,000 gallons of water per hour, unless sooner stopped by us. You to furnish all pipe, points, and working barrel and valves, together with plunger rods and all other material necessary to construct and complete the well in a first-class manner to the surface of the ground, and on completion of the work we agree to settle for the same at the rate of ($5.00) five dollars per foot, one-half to be paid in cash and the balance to be paid by our note for ninety days, without interest. We will furnish, at our own expense, the pump, or whatever we may decide to use to raise the water with. It is the understanding of this that you pay all bills for labor and material necessary to complete the work as above, for the above prices, and should the well have to be sunk below 250 feet, then the price shall be six dollars per foot below the first 250 feet, or for the second 250 feet, or any part thereof that it may be necessary to sink the well to obtain the necessary amount of water; and it is further understood that in no case shall the well be sunk deeper than five hundred feet (500) deep, at this price, from the surface of the ground. It is the understanding that when the well is complete as above it shall be paid for as first mentioned, namely, one-half cash and balance in note as above."

The former opinion, in part, hinged upon the construction therein given to the contract we have just quoted. As we read it, we are forced to conclude: First—That the defendant could, or would, fulfill it (this being the point which we now desire to settle) by sinking the well to such depth as to obtain a continuous flow of 2,000 gallons of water per hour. Second—That the depth could

not be extended beyond 500 feet under the existing contract, this because the contract did not provide for the payment of any consideration for any further prosecution of the work, and there were other facts in evidence which, we believe, fully support this conclusion. Third—That defendant was to stop whenever notified to do so by the company.

Pursuant, presumably, to the right given it by the contract to stop the sinking of the well at such time as it desired, the company served defendant with the following notice:

"*To Joseph Burns, His Agents, Assigns, and Employes:* It is provided in our contract of September 11th that you shall sink a tubular well of seven-inch lap pipe, welded iron pipe, at our vinegar factory at Omaha, and continue sinking the same until you get a supply of 2,000 gallons of water per hour, unless sooner stopped by us.

"We now exercise our right to stop you in accordance with said contract, and hereby notify you to forthwith cease work upon said well, to remove your machinery and tools from our property, and vacate our premises at once.

"J. H. BARRETT,
"*President.*"

At the time of the service of this notice the well was completed, as to dimensions and being properly cased, to a depth of 145 feet, and had proceeded beyond this some 375 feet. A portion of this latter distance pipe had been used but five inches in diameter, and a part four inches. In the former opinion the contract was construed as providing that the defendant was to obtain a continuous flow of 2,000 gallons of water per hour, and if he failed to do so within five hundred feet, to receive nothing for what he had done under the contract. We feel forced, at this time, to adopt a somewhat different conclusion in the one particular, *i. e.*, in respect to the flow of water. Doubtless the primary and moving purpose of the company's entering into the contract was to obtain

the water, and not an unsatisfactory or insufficient flow thereof. But if it was the intention to provide in the contract that a prescribed quantity or yield of water should result from the labors of defendant, or he should receive no compensation, the contract made did not express or carry out the intention. A contract may be executed, and they have been, binding the party sinking the well to furnish a satisfactory or definitely stated quantity of water, or get no, or a reduced, compensation for the labor performed. It is true that such a contract contains a possible hardship on the contractor, but to this it must be answered that it is a contract to perform a something which necessarily, as an inherent element, has this uncertainty or contingency, and if he voluntarily enters into the contract he assumes the risks and possible hardships incident thereto. Having done so, if the contingency becomes a certainty, a fact, he must bear the result. (*Jackson v. Cresswell,* 61 N. W. Rep. [Ia.], 383.) The rule is equally forcible as to the other contracting party, in this case the company, if the agreement is executed without provision that a specific flow of water shall be obtained, as was this one; then the labor and materials must be paid for as per contract, be the flow of water little or much. The recovery in the action was asked by the defendant on an allegation in the cross-bill of a performance of the contract on his part according to all its terms and conditions. At the time he was notified by the company to quit work on the well, as we have before stated, he had completed 145 feet in strict compliance with the terms of the agreement, and more than 300 feet additional partially. He was entitled, as we view the contract under the pleadings, to payment for the 145 feet at $5 per foot, or $725. The trial court, as to the remaining 350 feet of the 500 feet which it had concluded the defendant was, by the terms of the contract, to sink the well, unless sooner stopped, received evidence of what would be the reasonable value of the work and materials necessary to finish the well from the dimensions of five

and four inches in diameter, which such further portions of it had when the work was stopped, to what the agreement contemplated and demanded, and deducting the amount thus obtained from the sum which the number of feet, if completed according to contract, would have cost at the contract price, gave the defendant judgment for the balance. The defendant sought, in the evidence adduced on his part, to support three theories in relation to this smaller portion of the well. One that, under his definition of a tubular well, it might, under certain conditions, as detailed in the evidence, be completed and fulfill the contract and yet be, a great portion of it, not more than five inches in diameter, or four, or even less. Another that it was entirely proper to proceed from the 145-foot point, or any other, in fact, with the smaller pipe, and afterwards, as was his purpose if he thought it necessary, draw out the smaller pipe, make the hole larger, as required by the contract, and let down pipe of the contract dimensions. It was in evidence that defendant stated, at times when the work was in progress, when objections were made by some officers of the company to the use of the small pipe, that he was merely prospecting for water. The trial court adopted the theory that putting in the small pipes was a proper manner of proceeding with the work; that it was a completion of the well to the extent it had progressed, within the terms of the contract, and hence allowed compensation therefor, as we have hereinbefore outlined. This, we must conclude, was wrong. Under the pleadings the defendant could recover for only so much of the well as had been fully completed according to the contract. If he desired to do some prospecting or searching for water he could do so, and might, in so doing, perform labor, the results of which could afterwards be utilized in completing portions of the well to comply with the contract. It is of the evidence introduced in defendant's behalf that as soon as the small pipes were withdrawn the hole would at once, partially or wholly, fill with sand and other substances, as the case might be,

to what extent could not, with any certainty, be asserted. Certainly, then, evidence of what would be the recoverable value of completing the well must, of necessity, be as variable and uncertain as the conditions under which it would have to be performed, and could not be accurately estimated so as to furnish a reliable measurement on which to base a deduction from the fixed contract price, and say that we were requiring ascertained compensation from the company, a price specified by the agreement for finished work, under a pleading of a completed contract. Cases may arise, and probably have arisen, where the contract and the evidence will furnish and have presented such conditions as afforded opportunity for the application of the rule, or one similar to that indicated and for which contention was made, but it can have no bearing in this case. The articles of incorporation which had been adopted by the company were introduced in evidence, and in the seventh paragraph thereof it was provided as follows: "The affairs of this corporation shall be conducted by a board of directors of five members, who shall elect a president, vice president, and secretary, who shall also be treasurer; they shall appoint such superintendents, agents, and managers as they shall from time to time deem necessary for the transaction of the business of this corporation, and a person learned in the law as attorney and counsel thereof; they shall also have power to adopt a code of by-laws if they deem it necessary."

It is urged that there was no evidence of authorization by the board of directors of the making of the contract under which the defendant claims, or any right or power delegated to the president by which he could enter into any such agreement for the company so that it would be the contract of the organization. The company, so far as is shown by the articles of incorporation and the evidence, was not one having a seal. The contract was not required to be made by seal. It was admitted in the pleadings filed by the corporation, in answer to defendant's

cross-petition, that J. H. Barrett, who signed the contract, was the president of the company at the time of signing, and that he signed it as such president. The services to be performed were such as were then demanded, and thoroughly fit and suitable in and about the business in which the corporation was engaged. The defendant went on the premises of the company with the necessary machinery and implements to perform his part of the contract, began it, and continued it almost without ceasing, night and day, during three months or more, and in the work was directed and consulted with by the different officers of the company, and by and for the company was notified, in the manner provided for in the contract, to stop the work which he was doing under it, and moreover the company is here in this suit claiming relief under and by virtue of the terms and provisions of the agreement. There is sufficient here to constitute the contract binding on the company, whether it was so in its inception or not, which we do not here decide.

By the decree of the trial court the defendant was allowed a lien on the premises of the corporation, under the provisions of chapter 54, Compiled Statutes, entitled "Mechanics' and Laborers' Liens," for the amount adjudged due of his account. The first section of the chapter to which we have referred is as follows: "Any person who shall perform any labor, or furnish any material or machinery or fixtures, for the erection, reparation, or removal of any house, mill, manufactory, or building or appurtenance, by virtue of a contract or agreement, expressed or implied, with the owner thereof or his agents, shall have a lien to secure the payment of the same upon such house, mill, manufactory, building, or appurtenance, and the lot of land upon which the same shall stand." It is the established doctrine of this court that this section shall be given a liberal construction, so that, whenever practicable, thereunder, the mechanic, laborer, or furnisher of materials may be afforded a remedy for the enforcement of the accounts due them. But the improve-

ment for which the account in suit accrued was for the sinking of the well and casing it, an improvement which may be said to have been in the soil and cannot, by any liberality in the construction, however great, be brought within the meaning of the words "perform labor, or furnish any material or machinery or fixtures, for the erection  *  *  *  of any house, mill, manufactory, or building or appurtenance," etc., and the filing of the claim, etc., established no lien.

The former opinion, insomuch as it conflicts with this one, is overruled. The defendant may, within forty days, file a remittitur of the sum of $1,430.50 of the amount adjudged due him by the decree of the district court, as of the date of such decree. If he does so the decree will be set aside to the extent of its allowance of a mechanic's lien, and, as thus modified, it will be affirmed, and a decree will be entered in this court canceling the lien of record. If the remittitur is not filed the decree of the district court must in all things be reversed.

JUDGMENT ACCORDINGLY.