No. 21,508.

### L. F. SCHOFIELD, *Appellant*, v. SCHOOL DISTRICT NO. 113, Labette County, *Appellee*.

#### SYLLABUS BY THE COURT.

1. SCHOOL DISTRICT—*Authority of School Board to Have Well Drilled in School Yard.* Under the statute authorizing a school board to provide the necessary appendages for a schoolhouse, it may bind the district to pay for the drilling of a well in the school yard for the purpose of supplying drinking water, even although no suitable water is found, and the well is on that account entirely useless.

2. SAME—*Interpretation of Terms of Contract.* Language to the effect that a contractor agrees to drill a "water well," guaranteeing first-class work and a well produced by a machine of a specified make, payment to be made at the completion of the well, does not imply that he undertakes that water shall be found suitable for the use intended.

3. SAME—*Well Drilled—No Water Found—Contractor Entitled to Contract Price.* A well drilled under such a contract must be deemed to be completed, in such sense as to entitle the contractor to his pay, when it is made to appear that water of the kind sought cannot be found at a reasonable depth, and this condition must be regarded as established so far as he is concerned when the other party directs a discontinuance of the work.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed October 11, 1919. Reversed.

*John Madden, C. E. Cooper*, and *John Madden, jr.*, all of Wichita, for the appellant.

*W. D. Atkinson*, and *John T. Pearson*, both of Parsons, for the appellee.

The opinion of the court was delivered by

MASON, J.: L. F. Schofield entered into a written contract with the board of school district No. 113, of Labette county, to drill a well in the school yard, the purpose being to provide a

supply of drinking water. No water suitable for the purpose was found, and by direction of the board the drilling was abandoned at the depth of 293½ feet. The price agreed upon for the work was $1.25 a foot. The contractor, who had received $100, brought an action against the district for the balance of the agreed price of $1.25 a foot, also asking a further recovery on account of extra work and delay occasioned by the fault of the board. A demurrer to his evidence was sustained, and he appeals.

The grounds on which the defendant's liability is contested, assuming the plaintiff's evidence to be true, are (1) that a school district has legal authority to pay for constructing a well only on the theory that it is a necessary appendage to the schoolhouse, and that a well which produces no water fit to drink is useless and cannot be regarded as covered by that term; and (2) that the language of the contract made the plaintiff a guarantor that a supply of drinking water would be produced.

1. The power of a school district to contract is of course only such as is conferred by statute, expressly or by fair implication; and persons dealing with it are charged with notice of this limitation. (35 Cyc. 949, 951.) The district board is authorized to "provide the necessary appendages for the schoolhouse during the time a school is taught therein." (Gen. Stat. 1915, § 8976.) This court has held that the word "appendage" as used in the statute should be construed broadly, so as to include a well on the school premises, its necessity in a particular case being a question of fact. (*Hemme v. School District*, 30 Kan. 377, 1 Pac. 104.) The defendant, however, argues that a well which produces no water fit for drinking purposes, being absolutely useless, cannot fairly be considered an appendage to a schoolhouse, and certainly not as a necessary appendage. The argument has plausibility, but proceeds upon a quite literal interpretation, which we think would result in confining the discretion of the school board within too narrow limits. The evidence shows that a cistern holding rain water had formerly supplied drinking water for the school, but was not considered sanitary. This, obviously, justified the officers of the district in making reasonable efforts to procure a more satisfactory supply. They could not be sure that sinking a

Schofield v. School District.

well would answer the purpose, but they might naturally and reasonably suppose the chances were all in favor of it. The only way to find out was to make the attempt. We cannot say that, as a matter of law, they had no right to risk the money of the district in drilling the well unless they were sure it would meet the purpose for which it was intended. We think the authority to provide a well implied the authority to bind the district for the amount expended in an endeavor to construct one, following reasonable and usual methods, notwithstanding it resulted in a complete failure so far as practical results were concerned. Although in a particular case it might be possible to find a contractor who would carry the risk himself, this would presumably involve a considerable increase in the price, and the question as to whether that plan should be followed would be one calling for the exercise of sound business judgment. We conclude that the board had authority to make the contract, and the district was liable upon it if the contractor duly performed his part.

2. The material part of the contract read as follows:

"For and in consideration of One Dollar and Twenty-five Cents ($1.25) per foot, first party [Schofield] agrees to drill one water well on school yard east of school east of schoolhouse. First party agrees to furnish dry pipe suitable for casing out all surface water. Dry pipe to be 6¼-inch, I. D. First party guarantees first-class work and a stra well. In case of objectionable water other than surface water, second parties [the district board] agree to furnish all necessary casing for completion of well. Payment for said well to be cash on completion of said well."

The evidence tended to show that at a depth of twenty-four feet surface water was found, which was not suitable for drinking, and was cased out in accordance with the contract and the wish of the members of the board. At about eighty feet salt water was struck, and the board, after a delay to give opportunity for analysis, caused the plaintiff to proceed with the drilling, which was finally stopped by order of the director at 293½ feet, no usable water having been reached.

No explanation is offered of the combination of letters "stra" appearing in the contract. It may have been intended for "star," for the plaintiff testified that he used a Star drill machine. At all events, no force is attached to it by either party. The defendant argues that an undertaking on the part of the

plaintiff that water should be produced is fairly implied from the agreement to drill a "water well," and from the stipulation that payment was to be made on its completion. The expression "water well" might naturally be employed to distinguish the contemplated operation from an effort to reach oil or gas. "The use of the term 'well' . . . is not conclusive that a producing well was intended." (*Betterment Co. v. Blaes,* 75 Kan. 69, 73, 88 Pac. 555.) Contracts for the digging or drilling of wells often provide that payment shall depend upon the obtaining of water, but to be given that effect such a purpose ought to be made to appear by express statement or very clear implication, especially where the contractor does not choose the site. "If the agreement is executed without provision that a specific flow of water shall be obtained . . . then the labor and materials must be paid for as per contract, be the flow of water little or much." (*Omaha Consolidated Vinegar Co. v. Burns,* 49 Neb. 229, 233. See, also, *Gregory and Bishop v. U. S.,* 33 C. of Cls. 434; *Chapin v. L. Candee & Co.,* 35 N. Y. Supp. 1018; contra, *Jarrard v. Hill,* 14 Ky. L. Rep. 575.) Even a guaranty that water shall be produced has been held not to mean that the water shall be suitable for the purpose in view. (*American Well-Works v. Rivers,* 36 Fed. 880; *Blum v. Brown,* [Tex.] 33 S. W. 145; *Electric Lighting Co. of Mobile v. Elder Bros.,* 115 Ala. 138.) In a situation having some features similar to those here presented, this language has been used:

"Defendant founds his argument upon his construction of the word 'well'; that plaintiffs agreed to drill a 'well'; that a 'well' is a hole in the ground, containing water other than surface water; that when plaintiffs agreed to drill a 'well' they contracted to furnish an article meeting that definition, and that, if they did not produce a hole in the ground, containing water other than surface water, they did not drill a 'well' and cannot recover. . . . The defendant himself selected the site for the proposed well. Nothing was said about plaintiffs' undertaking to reach water. All that can be gleaned from the conversations of the parties is that plaintiffs were to dig a well. From this contract, and the circumstances, to construe an undertaking on the part of the plaintiffs to reach water or receive no pay seems to us to do great violence to language, and to the ordinary transactions of sane men. . . . When plaintiffs went to dig a well, when they took a site selected by defendants, when no guaranty of reaching water was made, when no price was fixed for performing the services or reaching water, can a court for a moment regard it is within the contemplation of the parties, as shown from their words or their acts, that they used the word 'well' as meaning a hole in the ground,

containing water other than surface water? We think not. Bouvier's Law Dictionary defines a 'well' as 'a hole dug in the ground in order to obtain water.' This is, to our mind, the only practical view. The object of a well is to obtain water. The well may be unsuccessful. The object of a mining shaft is to develop a mine that will pay—an object not always attained. Under the circumstances of the case, we cannot construe the word 'well' as defendant insists." (*Littrell v. Wilcox*, 11 Mont. 77, 83.)

The provisions of the contract relative to casing out water unfit for use serve to show that only water suitable for drinking was sought, but in our judgment do not further affect the question under consideration. They indicate that the finding of undesirable water at different depths was anticipated, and the purpose of their insertion was obviously to determine upon whom should fall the cost of the additional material thereby made necessary.

3. Even under a contract to prosecute the work of boring a well until the other party should be satisfied, or until water was found, it has been said that no obligation was created to go beyond a reasonable depth. (*Bohrer v. Stumpff*, 31 Ill. App. 139.) Here we think the well contracted for must be regarded as completed when it became apparent that good water could not be obtained within a reasonable depth—a condition established so far as the plaintiff was concerned by the order of the director to discontinue the drilling.

The judgment is reversed, and the cause is remanded for further proceedings.